IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MONTE L. HANEY,                                  No. 2:11-cv-1218-MCE-CMK-P

    Plaintiff,

  vs.                                           FINDINGS AND RECOMMENDATIONS

A. NANGALAMA, et al.,

    Defendants.

_____/

        Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment (Doc. 62).  Plaintiff filed an opposition to the motion, and defendant filed a reply.

### I.  BACKGROUND

**A.  Plaintiff's Allegations**

        This case proceeds on plaintiff's amended complaint (Doc. 29).  Plaintiff alleges that the defendants refused to give him medication that was prescribed by another doctor, and defendant Sahota would not approve of the medication.  He claims Dr. Ali prescribed omega-3, Vitamin C, Vitamin E, and Gabapentin, to treat his neurological vascular migraine headaches.

1

However, despite the orders from Dr. Ali, plaintiff claims defendant Nangalama refused to issue renewal orders for the medications, and defendant Sahota refused to approve the non-formulary medications.  Plaintiff alleges the defendants actions were deliberately indifferent to his medical needs, in violation of his Eighth Amendment rights, as well as a violation of his Fourteenth Amendment rights.

B. **Defendants' Evidence**

Defendants have submitted a statement of undisputed fact in support of their motion for summary judgment.  The statement of undisputed fact are supported by defendants' declarations, as well as declarations from custodians of record, with attached exhibits.  The evidence is summarized below:

Defendant Sahota

- Gabapentin, a generic form of Neurontin, was deleted from the CDCR Drug Formulary in February 2011.  In February 2009, its use was restricted to control seizure disorders or treatment of neuropathic pain.

- In order for an inmate to receive a Non-Formulary prescription, their healthcare provider must submit a specific request for approval of the drug, setting forth a diagnosis and support for the prescription.

- As of February 2010, Vitamin C and Omega-3 were no longer available through prescription, due to little to no evidence of their efficacy, but continued to be available as over the counter items in the canteen or from an inmate's family.

- In February 2010, Vitamin E was removed from the CDCR Drug Formulary, and was then subject to the non-formulary pre-authorization.

- Defendant Sahota's only involvement in plaintiff's medical treatment was her review of non-formulary medication.

- Dr. Sahota's custom and practice is to deny non-formulary items unless the item is medically necessary for the patient's care.  For that, Dr. Sahota relies on the treating provider to provide justification for an inmate's need for a non-formulary item.

- Plaintiff was provided a one-time 30-day supply of Vitamin E, for undetermined reasons.

///

- Dr. Sahota signed the approval for plaintiff's referral to a neurologist.

- Dr. Sahota states she was not ever deliberately indifferent to plaintiff's medical needs, nor did she ever intentionally or knowingly cause plaintiff pain, suffering or injury.

Defendant Nangalama

- Dr. Nangalama was plaintiff's primary care provider, and treated plaintiff for a variety of complaints, including hypertension and headaches.

- In September 2009, plaintiff complained about headaches and pain in his neck and back. Dr. Nangalama prescribed plaintiff aspirin.

- Plaintiff did not complain about headaches again until April 2010. He complained again about headaches in May 2010.

- In May 2010, plaintiff was seen by Dr. Ali because Dr. Nangalama was unavailable. According to Dr. Ali's progress notes, plaintiff complained about headaches and irritability. Dr. Ali noted that plaintiff had undergone a brain study in August 2004, and that the adult psychiatrist suggested plaintiff be put on Vitamin E, Vitamin C, Omega-3 and Neurontin. Dr. Ali wrote a referral for plaintiff to see another neurologist, but also wrote an order for plaintiff to receive Vitamin E, Vitamin C, Omega-3 and Neurontin. However, Dr. Ali did not write a diagnosis on the prescription for Gabapentin (the generic for Neurontin).

- Plaintiff thereafter submitted a request for Omega-3, Vitamin C and Gabapentin. He received the Vitamin E. Plaintiff was informed Omega-3 and Vitamin C were unavailable through the pharmacy, and Gabapentin was pending approval.

- Dr. Ali's order was not approved because it did not contain a diagnosis. Dr. Nangalama wrote an order for the Gabapentin in June 2010, which was approved and administered to plaintiff.

- Plaintiff refused the Gabapentin stating he did not like the side effects. Plaintiff submitted his request requesting Omega-3 and Vitamin C, but not Gabapentin. Dr. Nangalama decreased the amount of Gabapentin, but plaintiff continued to refuse. The Gabapentin prescription was discontinued because of plaintiff's continuous refusal to take it.

- Plaintiff then informed Dr. Nangalama at a follow up appointment in June 2010, that his headaches had improved. Labs were ordered in an attempt to determine the etiology of the headaches.

- Dr. Nangalama interviewed plaintiff in July 2010 in response to his inmate appeal requesting Vitamin C, Omega-3 and Gabapentin. His request for Vitamin C and Omega-3 were denied because his lab results showed no malnutrition and his physical exam had been normal. It was Dr.

        Nangalama's opinion that plaintiff's condition did not warrant a need for the vitamins. Plaintiff's request for Gabapentin was denied due to plaintiff's refusal to take the Gabapentin in June 2010. In addition, Dr. Nangalama's opined Gabapentin was not medically appropriate.

- Plaintiff had a follow up appointment with Dr. Nangalama in July 2010, wherein plaintiff's normal lab results were discussed, and plaintiff reported his headaches had improved and had no new medical issues.

- Plaintiff had another follow up appointment with Dr. Nangalama in August 2010, after his appointment with the neurologist. The neurologist, Dr. Pineda, diagnosed plaintiff with (1) vascular headaches similar to but not classical migraine and (2) history of head trauma in an abnormal SPECT scan. In the report, Dr. Pineda wrote that he offered plaintiff preventative medications for migraines, but plaintiff had refused them all. Dr. Pineda also noted that plaintiff had requested Omega-3, Vitamin C and fatty acids, but Dr. Pineda did not specifically recommend the vitamins, and did not find further neurological study necessary. Plaintiff continued to request Vitamin C, Omega-3, Vitamin E, and Gabapentin, but based on Dr. Pineda's findings and Dr. Nangalama's examination, Dr. Nangalama opined none were medically necessary.

- In December 2010, Dr. Nangalama again saw plaintiff for headaches. Plaintiff continued to request Vitamin C and Omega-3, as well as stronger pain medication. Dr. Nangalama informed plaintiff that he did not believe his condition warranted the Vitamin C and Omega-3. Plaintiff thereafter became hostile with Dr. Nangalama, and left the clinic without any assistance or signs of discomfort.

- It is Dr. Nangalama's professional opinion that plaintiff received all reasonable and necessary care for his condition consistent with community standards, that prescribing Vitamin C, Vitamin E, and Omega-3 was not warranted given plaintiff's normal lab and imaging results, and that prescribing Gabapentin was not warranted because there were other formulary medications available and prescribed to address plaintiff's complaint.

- Dr. Nangalama states he was not deliberately indifferent to plaintiff's medical needs, nor did he ever intentionally or knowingly cause plaintiff any pain, suffering or injury, or refuse to provide him with necessary care or treatment.

C. **Plaintiff's Evidence**

        Plaintiff contends there is a genuine issue of material facts as to whether the defendants intentionally interfered with his medical treatment by refusing to provide him with Vitamin C and omega-3, and by refusing to renew his prescription for Gabapentin and Vitamin

4

1  E.  In support of these contentions, plaintiff submits some of the same medical records the
2  defendants used in support of their declarations, as well as some discovery responses.
3  Specifically, plaintiff relies on the 2004 brain SPECT scan to support his position
4  that the vitamins were necessary.  The most significant finding from the brain scan, pursuant to
5  the final report, was an overall decreased perfusion, which was worse with concentration, and
6  brain trauma.  The neurologist, Dr. Amen, stated that given the constellation of findings, if the
7  clinical symptoms warrant, one might consider an anticonvulsant, a stimulating antidepressant, or
8  a memory enhancement protocol. A memory enhancement protocol may include exercise,
9  avoidance of behavior with risk of brain injury, fish oil to boost omega-3 levels, Alpha Lipoic
10  Acid, Acetyl-L-Carnitine, Vitamin E, Vitamin C, Phosphatidal Serine, Gingko Biloba, low dose
11  ibuprofen, and Coenzyme Q10.
12  In addition, plaintiff contends that defendant Nangalama falsified his medical
13  records to the extent that he never reported an improvement in his headaches.

15  **D.  Undisputed Facts**
16  It is clear from the above, that there is no dispute over the medical treatment
17  plaintiff received.  The parties agree that in 2004, plaintiff had a brain SPECT scan, and the
18  neurologist made some suggestions as to how plaintiff might enhance his memory through the
19  use of, *inter alia*, Vitamin C, Vitamin E, and omega-3, and the use of an anticonvulsant (such as
20  Neurontin). In addition, it is undisputed that plaintiff was seen several times from September
21  2009 through December 2010 for headaches.  During one of those medical visits, on May 20,
22  2010, Dr. Ali ordered Vitamin C, Vitamin E, omega-3 and Neurontin, based on the 2004 brain
23  scan.  Dr. Ali also ordered a new neurological consultation.  The neurological consultation
24  occurred on August 3, 2010.  The neurologist, Dr. Pineda, found plaintiff suffered from vascular
25  headaches similar to but not classical migraine, and had a history of head trauma in an abnormal
26  SPECT scan.  Dr. Pineda noted that plaintiff was offered preventative medications for migraine,

i.e. Neurontin, Depakote, Topamax, but he refused due to possible side effects.  Instead, plaintiff requested the medication suggested by the SPECT scan, i.e. fish oil, vitamin C, and omega-3.  Dr. Pineda's formal report does not indicate that he suggested such treatment, only that plaintiff had so requested.  Rather, Dr. Pineda's recommendation was that no further neurological study was necessary at that time, and that plaintiff should return p.r.n.  Even on the consultation sheet, it appears that Dr. Pineda noted plaintiff refused a prescription but requested Vitamin C and omega-3 as previously recommended. (Def. MSJ Exhibits, Doc. 62-7, at 55-57).

Additionally, defendants' evidence clearly indicates that plaintiff was provided Gabapentin, which he refused several times.  While plaintiff later requested and was denied a new prescription for Gabapentin, he has not provided any evidence to dispute that he was provided the medication and he refused it.

There is also no evidence to dispute that Vitamin C, Vitamin E, and omega-3 were discontinued from the formulary list, but were available to inmates over the counter in the canteen or through outside sources.

## II. STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

///

>always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed

1  before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.
2  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
3  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
4  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
5  1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for
6  the judge, not whether there is literally no evidence, but whether there is any upon which a jury
7  could properly proceed to find a verdict for the party producing it, upon whom the onus of proof
8  is imposed."  Anderson, 477 U.S. at 251.

### III.  DISCUSSION

Plaintiff alleges the defendants violated his Eighth Amendment rights by refusing to provide him medication that was prescribed by another doctor.  Specifically, plaintiff argues Dr. Ali prescribed Vitamin C, Vitamin E, omega-3 and Gabapentin.  However, Dr. Sahota denied the request for the non-formulary vitamins, and Dr. Nangalama refused to renew the prescription for Gabapentin, thereby intentionally interfering with a previously prescribed treatment. Defendants contend there is no evidence that they were deliberately indifferent to plaintiff's medical needs, nor that they violated plaintiff's due process rights.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only

when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Similarly, a difference of opinion between medical professional does not amount to deliberate indifference. See Snow v. McDaniel, 681 F.2d 978, 987 (9th Cir. 2012) (citing Sanches v. Vild, 894 F.2d 240, 242 (9th Cir. 1989)). "To show deliberate indifference, the plaintiff 'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" Id. (Citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

Here, defendants argue that Dr. Nangalama provided continuous care and treatment of plaintiff, and did not disregard a substantial risk of injury to plaintiff. Dr. Nangalama argues it was his professional opinion that there was no medical need indicated for Vitamin C, omega-3 or Vitamin E, especially given plaintiff's normal lab results. And that plaintiff has shown nothing more than a difference of opinion as to the proper treatment he received. Similarly, Dr. Sahota argues there is no evidence that she was deliberately indifferent to plaintiff's medical needs. The sole basis for plaintiff's claim is Dr. Sahota's denial of non-formulary medication. Dr. Sahota acknowledges she denied approval of these non-formulary medications, but argues the basis for doing so was not improper, and was based on a lack of support and the availability of the items though the canteen or elsewhere.

In opposition, plaintiff argues that the defendants intentionally interfered with his previously prescribed treatment. Specifically, that Dr. Ali prescribed the vitamins and Gabapentin, and the defendants refused to provide them.

It is clear from the evidence submitted, that plaintiff was provided medical treatment for his headaches. He was prescribed aspirin and Gabapentin. He was referred for a

second time to a neurologist, who offered plaintiff a prescription for several traditional medications, which plaintiff refused.  Plaintiff argues he was denied the recommended vitamins to help his headaches.  However, there is nothing in the evidence before the court, that the vitamins and omega-3 were medically necessary for his headaches.  Rather, it appears they were recommended to him for assistance with his memory and concentration.  Even if there was a suggestion that the vitamins may help his headaches, the second neurological assessment did not come to the same conclusion.  It is indicated that plaintiff continued to request the vitamins, as noted on the neurologist's report, but there is no indication that the vitamins were medically necessary or even recommended.  Indeed, based on the undisputed evidence before the court, plaintiff was offered medical treatment which he declined in favor of a treatment he preferred.  A difference in opinion as to the best medical treatment is not a sufficient basis for find an Eighth Amendment violation.  See Jackson v. McIntosh, 90 F.3d at 332.

To the extent plaintiff could show that one doctor thought the vitamins may be beneficial, a difference in medical opinion is insufficient grounds to find a violation of plaintiff's Eighth Amendment rights.  Rather, plaintiff must show the doctors were deliberately indifferent to his condition, and the course of treatment provided was medically unacceptable.  He fails to meet that standard here.  Plaintiff was not denied treatment.  He was seen several times over the time frame involved in this action.  He was provided a prescription for aspirin to help with his headaches, as well as Gabapentin.  He refused the Gabapentin due to the side effects.  Dr. Nangalama's refusal to prescribe the Gabapentin after plaintiff's refusal to take the medication is insufficient to show deliberate indifference.  This is not a situation, as plaintiff tries to argue, where prison officials interfered with the treatment plaintiff was prescribed.  Rather, here there are doctors who at best disagreed as to the medical benefits the vitamins may have, and decided on a different course of treatment.

Plaintiff relies on the 2004 brain scan to support his position that the vitamins were medically necessary to help his headaches.  However, there is no indication in the brain

11

1  scan report that the use of the vitamins would assist with headaches.  Rather it appears the use of
2  vitamins was expected to assist plaintiff with his memory.  In addition, the report specifically
3  indicates that the perfusion seen on the studies may be associated with several different findings,
4  including unexplained headaches.  The report then indicates that "We have found abnormalities
5  in this part of the brain to be helped with anticonvulsant medication when clinically indicated."
6  (Plf. Opp., Doc. 63, at 34).  This report is insufficient to support his claim that the vitamins were
7  medically necessary treatment for his headaches.

8  Plaintiff submits a request that the court review a new Ninth Circuit decision
9  regarding differences in medical opinion.[1]  The undersigned has done so, and while the Ninth
10  Circuit addresses the issue of differing medical opinions, the facts in this case are distinguishable
11  from those in Snow v. McDaniel, 681 F.3d 978 (9th Circuit 2012).  Unlike the situation in Snow,
12  here, plaintiff offers no evidence that the vitamins he requested were actually necessary to treat
13  his headaches.  While there is no doubt that Dr. Ali ordered the vitamins, that was done in
14  reliance on the 2004 brain scan.  Reviewing the brain scan report makes it clear that the vitamins
15  were suggested as a means of improving plaintiff's memory and concentration.  There is no
16  indication they would be helpful in improving plaintiff's headaches.  There is simply no evidence
17  before the court that the vitamins were medically necessary to treat plaintiff's headaches.
18  Similarly, plaintiff was offered Gabapentin, and refused to take it.  Based on that refusal, he was
19  denied a new prescription.  He was, however, offered other medication by Dr. Pineda which he
20  similarly refused.  Accordingly, the undersigned finds plaintiff has offered no evidence to support
21  his claim that the treatment provided was medically unacceptable under the circumstances, nor
22  that the defendants consciously disregarded an excessive risk to plaintiff's health.

23  Similarly, Dr. Sahota's refusal to approve the non-formulary vitamins is an
24  insufficient basis in which to find an Eighth Amendment violation.  Dr. Sahota, as a reviewing

---

[1] Plaintiff actually filed a request for the court to take judicial notice of this recent case.  However, judicial notice of a published Ninth Circuit case is unnecessary.

supervisor, relies on the treating physicians to provide support for such non-formulary medication. Without the necessary support, those types of requests are routinely denied until such support is provided. Then the requests are evaluated on an individual basis. The vitamins requested were found to be otherwise available to prisoners in general, and not restricted. Thus, despite plaintiff's argument that he was indigent and therefore unable to afford to purchase the vitamins through the canteen, there is no evidence before the court that Dr. Sahota was specifically aware of that, nor that the reason she denied the request was personal as to plaintiff in order to meet the subjective requirement.

Finally, defendants challenge[2] plaintiff's due process claim. However, in his opposition to the motion, plaintiff explains that this is not actually a separate claim, but is really part of his cruel and unusual punishment claim under the Eighth Amendment. He explains his citation to the Fourteenth Amendment in that the Fourteenth Amendment makes the Eighth Amendment applicable to the states. Therefore, there is no separate due process claim.

### IV. CONCLUSION

The undersigned finds no genuine issue as to any material fact. Based upon a recommendation from another doctor, plaintiff requested Vitamin C, Vitamin E, omega-3 and Gabapentin. The defendants denied plaintiff's request. However, the reasons for the denial, and the other treatment plaintiff sought and received clearly shows no deliberate indifference to plaintiff's medical needs. Rather, at best there was a difference in opinion as to the appropriate treatment, and a determination that the vitamins were available through other non-prescription

---

[2] Defendants also raise a qualified immunity defense in their motion. However, as the undersigned has found no Eighth Amendment violation, it is not necessary to address the qualified immunity issue. If the undersigned were to address the defense, however, it is not likely that a reasonable doctor in a similar circumstance would have thought his/her conduct would have violated plaintiff's Eighth Amendment rights by denying plaintiff the vitamins and prescription he requested under these circumstances. See Saucier v. Katz, 533 U.S. 194, 205 (2001).

means.  Thus, plaintiff fails to meet his burden to show any evidentiary support for his claims that the defendants were deliberately indifferent to his medical needs in violation of his Eighth and/or Fourteenth Amendment rights.

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion for summary judgment (Doc. 62) be granted;
2. All other motions be denied as moot;
3. Judgment be entered in favor of defendant; and
4. The Clerk of the Court be directed to enter judgment and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


 DATED:  August 20, 2013

                                      _____
                                      **CRAIG M. KELLISON**
                                      UNITED STATES MAGISTRATE JUDGE